## INSURANCE.

[Circuit Court of Lucas County.]

CHARLES A. HERBERT v. STANDARD LIFE & ACCIDENT INS. CO.*

Decided, October 26, 1901.

*Accident Policy—Taken by a Railway Employe—Premiums Payable on the Installment Plan—Insured Assigns Part of His Wages to Meet Premium—Afterward Collects All the Wages Due Him—And is Injured Before the Insurance Company Would Have Received Its Premium Under the Assignment—When Did the Premium Become Due.*

1. Where a railway employe assigns a part of his wages for a given month to an insurance company, to pay the premium on an accident policy, which premium would become due in the regular course during that month, and the insurance company accepts the assignment, and the wages so assigned by a custom of the railway company are not payable until the 15th of the following month, and the employe leaves the service of the railway company during the month in question and draws all the wages due him, and before the end of the month meets with an accident, he can not maintain a suit on the policy on the theory that the unpaid premium was not payable until the 15th of the following month. [To this holding Judge Parker dissents, his view being that it was the privilege of the insured to have paid the premium with other money than the wages earned in the service of the railway company, and at any time on or before the 15th day of the following month.]

2. An accident insurance company can not avail itself of a provision in an application for insurance that the applicant has no other insurance, when it is in evidence that the insured told the agent of the company with whom he dealt that he had another policy, and the application was made out by the agent in his own handwriting.

HAYNES, J.; PARKER, J., and HULL, J., concur.

This suit was brought upon a policy of insurance issued by the defendant company to Charles A. Herbert, and the case was tried and submitted to a jury in the court of common pleas, and a verdict was rendered for the defendant. Thereupon the plaintiff prosecutes this proceeding in error.

* Affirmed by the Supreme Court, March 24, 1903.

The policy is a peculiar one, and was issued on the installment plan. The leading facts of the case are that Herbert was an engineer on a railroad in the state of Minnesota, and on March 28, 1900, he met an agent of that company whom he had met before, at a hotel, and the agent renewed the subject of accident insurance and the issuing of a policy of accident insurance to him, and it was finally agreed that Herbert would take one. Thereupon the plaintiff wrote out the application, which was signed by the assured, and the agent then filled out the policy of insurance and delivered it to the assured on that same day. That policy was to commence on March 28, 1900, at noon. An assignment was made of the wages of the assured upon the railroad company, for four months, being $14.40 a month, which would pay the amount of the premiums, $57.60, under the terms of the policy, to which I will refer later.

The plaintiff continued in the employ of the company during the balance of March, the month of April, and until May 17, at which time he drew the money that was due him for the month of May, the money that was due the insurance company for the month of April having been paid to it by the railway company. On May 17 he drew the whole of his money, left the employ of the company, came to Toledo, Ohio, where he remained for some time, and on May 29 he was injured by a fall, breaking his leg. He then brought suit against the insurance company for the amount of certain monthly payments that he claims are due him under the terms of the policy.

The defense is, that under the peculiar terms of the policy and the action of the plaintiff, the policy had terminated on May 28, and was not in force at the time the plaintiff was injured on May 29.

That brings us to the terms of the policy. It is said to be a policy upon the installment plan; that is to say, it has been conceived and gotten up for the purpose of insuring persons who have no present means of paying the premiums, and who make arrangements to have the payment made from their wages. The policy starts out:

"In consideration of the warranties in the application for this policy, and of an order which is to be considered an as-

signment of moneys therein specified on the paymaster of the C., St. P., M. & O. Ry., hereby insures Charles A. Herbert, of St. James, locomotive engineer by occupation, for the period or periods hereinafter specified, beginning at 12 o'clock noon, standard time, of the day this policy is dated, against bodily injuries sustained, through external, violent, and accidental means, and will pay to him, if surviving, or to Mrs. Anna Herbert, his wife, or, in event of her prior death, to the executors, administrators or assigns of the insured, the indemnity provided in the schedule hereinafter contained, styled, death and indemnity.''

In the application for the policy of insurance, after stating many other things, it is stated:

''Accident premium, $57.60. The premium to be paid by four equal monthly installments as follows: $14.40 from my wages for the month of April, 1900; $14.40 from my wages for the month of May, 1900; $14.40 from my wages for the month of June, 1900; $14.40 from my wages for the month of July, 1900; which shall apply to the respective insurance periods, and that the policy shall be considered binding only for such insurance period as is covered by an installment of premium actually paid, except as to the time fixed for payment of the first installment.''

Here is the peculiarity of the installment plan: ''The payments made in the order of assignment are premiums for separate consecutive periods of two, two, three, and five months; and each is to apply only to its corresponding insurance period. All claims for injuries received during any period for which the respective premium shall not have been actually paid shall be forfeited to the company. Except that in case of a just claim before the first premium is due, if the sum due the insured be less than the sum of all the payments called for by the order or assignment, the amount of the claim shall be credited thereon; if greater, the order or assignment shall be receipted in full and the balance paid to the insured. In making settlement for any claim for injuries received during any insurance period for which the premium has been paid, the amount of the premium for later unpaid periods may be deducted from the amount found due.''

It is further provided that ''in case the insured shall fail to leave in the hands of the paymaster any installment of pre-

mium as it shall fall due, as agreed in said order or assignment, this policy shall be void.''

Then there is attached to it the written assignment:

''For value received, I hereby assign to the Standard Life & Accident Insurance Company, of Detroit, Michigan, or its authorized agent, four premiums, for separate insurance contracts, as follows:

''First premium, $14.40, to be paid and deducted from my wages, for the month of April, 1900.

''Second premium, $14.40, to be paid and deducted from my wages, for the month of May, 1900.

''Third premium, $14.40, to be paid and deducted from my wages, for the month of June, 1900.

''Fourth premium, $14.40, to be paid and deducted from my wages, for the month of July, 1900.

''EXPRESS AGREEMENT.—The payments named in this assignment are premiums for separate and independent contracts for consecutive periods of two, two, three, and five months; and each shall apply only to its corresponding insurance period. All claims for injuries received during any period, for which its respective premium shall not have been actually paid, shall be forfeited to the company. Except that, in case of a just claim, before the first premium shall be due, if the sum due the insured be less than the sum of all the payments called for by this assignment, it shall be credited thereon; if greater, the assignment shall be receipted in full and the balance paid to the insured.''

The effect of that policy was to insure him for a year, if the payments were made. The first covered two months, and the next the two months following, and the next three months, and the next five. Under the terms of payment, the policy being issued on March 28, the amount taken out of the earnings of the month of April—$14.40—paid two months, to-wit, to May 28; then the payments taken out of the May earnings would pay two months more, to-wit, to July 28, and the June payment would pay to October 28, and the July payment would pay for the balance of the year, five months. This is the written contract. As a matter of fact, the railway company in the course of its business only made their payments monthly, on the fifteenth day of the following month; that is to say, the earnings

for the month of April were paid to the plaintiff on May 15, and so on for each of the succeeding consecutive months.

The first payment of $14.40 in this case was paid on May 15, and on the seventeenth day he left the employ of the company, and took the whole of his May wages, leaving nothing whatever in the hands of the company, and on May 29 he was injured, and the claim is made now on the part of the assured that his policy was still in force at the time he was injured, and that he has a right to recover. The company, on the contrary, claims that inasmuch as he had drawn his money out of the hands of the railway company, and had left nothing there for the payment of the amount due, under the terms of the policy, the policy had ceased to exist and be in force on May 28.

We have examined the case very fully, but we have not been able to agree entirely upon the rights of the parties, and the opinion that is now delivered will be the opinion of a majority of the court.

It will be observed that nothing whatever is said in the policy or application in regard to any extension of time when the payment of these sums assigned will or may be made. It is only shown by extraneous evidence that as a matter of custom the railroad company did not make its payments until the fifteenth day of the following month for any month's wages, and the testimony shows that this was understood by the insurer, because this was not the only policy it held upon employes of this railroad company similar to the one in controversy. It seems to have been the custom of the insurance company to send a list, prior to the middle of the following month, of the policies that had been issued and the amounts that were due, to the railway company, and the company had been accustomed to leave in the hands of the paymaster money to a sufficient amount to pay the insurance premiums, and, as we understand, pay it to the insurance company. It amounted in one month that is shown here to something like $460 for that month.

The question here is whether this policy of insurance was in force on May 29. The majority of the court are of the opinion that it was not. In the first place, the assignment of the payments was an absolute assignment: ''I hereby assign to the

Standard Life & Accident Insurance Co., of Detroit, Mich., or its authorized agent, four premiums for separate insurance contracts as follows.'' It appears incidentally in the evidence that the assignment was recognized by the railway company. It consented to the separating of plaintiff's wages, and paid a part to him and a part to the insurance company; so that at least so far as he was able, he had vested in the insurance company those respective sums. It was provided in the tenth clause—

"In case the insured shall fail to leave in the hands of the paymaster any installment of premium as it shall fall due, as agreed in said order or assignment, this policy shall be void.''

Herbert's wages for the month of May would not, in the course of the business, be paid to him until the middle of June, but it was the right of the company to expect, under this assignment, that so much of that amount that was earned during the month of May would be left in the hands of the railway company to meet the amount of this premium of $14.40. He had assigned it to the insurance company absolutely, on the face of the assignment, and it provided that he should leave this amount with the railway company, or his policy would be void. In this particular month he had earned more than sufficient to pay the $14.40, for at the time he left he drew out about $60 in money, that being all that was due him, and left no sum whatever in the hands of the company with which to meet this assignment that was outstanding. His contention is that he had a credit, by the course of their business, to the middle of the next month to make the payment for that period, and if at the time the money became due, on the fifteenth of the month, he should place that amount with the railroad company, or perhaps tender it to the insurance company in some other form, that then his policy would be good, and would be continued. But it is the opinion of the majority of the court that he had no credit to that time, save and except as he left for the insurance company the amount of money that was earned during the month, to cover the premium for the two months after March 28. Had he left that amount of his earnings in the hands of the railway company, for that month, the majority of

the court have no doubt that then the insurance would have continued; that is to say, by the course of dealing of the insurance company, when the money was left with the railroad company, the insurance company was willing to wait until the middle of the month to receive it. But they had expressly agreed that unless the money was left there, the policy would be void. The plaintiff chose not to leave it, thus violating his assignment and his agreement, and his policy became void. The money being earned, it was a payment in advance. And that was anticipated by the insurance company, because there is a special agreement in regard to this month, that is to say, the month of April, the wages for which were unearned at the time the policy was issued, and he was permitted to have his insurance, although the payment was not to be made until later on.

The question is made as to whether a certain statement was made by the assured in regard to having other insurance, which would avoid his policy, there being no provision in the application that he had no other insurance. The testimony of the plaintiff that he told the agent at the time of filling the application (which was done by the agent himself, in his own handwriting) that he had another policy of $1,000 in a casualty insurance company in Detroit, and the agent went on and drew the application, had him sign it, wrote the policy and delivered it to him, with full knowledge of that fact, we think under the policy of the law and the decisions, that that should not avoid the policy.

Other questions were made in the case, but inasmuch as the majority of the court are of the opinion that the policy of insurance was not in force at the time the accident occurred, it is unnecessary to discuss those.

The judgment of the court of common pleas will be affirmed.

*Marshall & Fraser,* for plaintiff in error.

*Smith & Baker,* for defendant in error.

PARKER, J., dissenting.

I find myself unable to concur in the conclusions of my associates in this case, and I will undertake to state the grounds of my dissent.

This insurance, like all other insurance of which I have ever had any knowledge, appears to me to have been written in consideration of certain premiums to be paid at certain times, and not in consideration of money to be earned in a certain way or at certain times, or to be kept on deposit in a certain place. It seems to me, therefore, that the crucial question, the whole question here is: Did the insured fail to pay his premiums or any installment of the premiums at the time agreed upon, whereby the policy lapsed or lost its force?

It will be observed, as already stated, that this policy, and this application and the so-called assignment, provide that the payments are premiums for separate and independent consecutive periods of two, two, three and five months, and further, that each installment shall apply only to its corresponding insurance period. The sum of these periods is one year, and the sum of these installments of premium is $57.60.

The first period of two months began on March 28, and expired May 28. The premium for this period, $14.40, was paid on May 14 from the April wages of the insured. It appears that that was the time agreed upon as the time for the payment of this premium, though another time is expressly stated in the contract. I arrive at this from the circumstances surrounding the transaction. There is no controversy about that; the insured was to receive his April wages from the company on May 14, and he could not receive them before, and the insurance company could not receive those wages before that time upon this so-called assignment. So that the insurance company had agreed to give to the insured a credit of seventeen days for the payment of this first installment of premium. I shall undertake to point out that there was no special arrangement about this particular payment, but that all these payments stand upon precisely the same footing.

The second period began on May 28 and expired on July 28. The premium for that period was $14.40, to be paid from his

May wages, which would become due and payable on June 14; and therefore he was to have a credit of seventeen days for that premium. In other words, his policy was to be in force for a period of seventeen days of that second period without previous payment of anything on account thereof.

The third period began July 28 and expired October 28. The premium for that period was $14.40, to be paid from his June wages, that is, on July 14th. So that on account of this period the company extended him no credit, but required him to pay this installment of premium fourteen days in advance of the beginning thereof. The fourth period began on October 28, 1900, and expired on March 28, 1901. The premium for that period was $14.40, to be paid from his July wages, that is, upon August 14, when his July wages would become due and payable, and would be available to him or to the company. So that the company did not agree to extend to him any credit or time for the payment of the premium on account of that period, but on the other hand they required him to pay for that period seventy-two days in advance of the beginning thereof.

In order to keep the policy alive as to the third and fourth periods, the payments on account thereof must be made in the one case fourteen days before it began, and in the other case seventy-two days before it began. And that seems to me to be important in view of certain provisions in the policy, the assignment and the application upon the construction whereof we differ. The so-called assignment after providing that the assured assigns to the Standard Life & Accident Insurance Company or its authorized agent, four premiums for separate insurance contracts, and stating the amounts and the wages from which these installments are to be deducted, this occurs:

"Express Agreement.—The payments made in this assignment are premiums for separate and independent contracts for consecutive periods of two, two, three and five months; and each shall apply only to its corresponding insurance period."

Then comes this sentence:

"All claims for injuries received during any period, for which its respective premium shall not have been actually paid, shall be forfeited to the company."

That is followed by this:

"Except that, in case of a just claim, before the first premium shall be due, if the sum due the insured be less than the sum of all the payments called for by this assignment, it shall be credited thereon; if greater, the assignment shall be receipted in full and the balance paid to the insured."

I have divided this clause to make my meaning more clear. The construction that is put upon this entire clause beginning with the words "express agreement," by counsel for the insurance company and by my associates, is this: That all claims for injuries received during any period except the first period, for which its respective premium shall not have been actually paid, shall be forfeited to the company; but as to the first period, if there shall be a just claim before the premium therefor falls due, the sum due the assured shall be paid to him. I do not put that construction upon this paragraph. It seems to me that the exception set forth here has no application whatever to the sentence and provision reading as follows: "All claims for injuries received during any period, for which its respective premium shall not have been actually paid, shall be forfeited to the company," but that the exception applies to the sentence immediately preceding that, and that this sentence which I have just read stands alone and independent of the others, and is general in its terms, applying to any injury and to any premium. I will read the clause, omitting that sentence, so that the application may be seen:

"The payments named in this assignment are premiums for separate and independent contracts for consecutive periods of two, two, three and five months; and each shall apply only to its corresponding insurance period. Except that, in case of a just claim, before the first premium shall be due, if the sum due the insured be less than the sum of all the payments called for by this assignment, it shall be credited thereon; if greater, the assignment shall be receipted in full and the balance paid to the insured."

In other words, if a loss occurs before May 14, the premium for the whole year, that is, $57.60, may be set off by the company against the amount of such loss; if a loss shall occur after

May 14, no more shall be set off by the company than the premium for the period within which the loss occurred. And this stipulation for the set-off for periods subsequent to the first period could apply to the second period only, and *shows that it was contemplated that a loss might occur before the premium for the second period had been paid.* I say it could apply to the second period only, since with respect to the third and fourth periods it is expressly provided that, in the one case the premium shall be paid fourteen days before the period begins, and in the other case seventy-two days before the period begins. This exception, therefore, as to the first period, in favor of the company, is to the effect that in consideration of their giving this credit of a month and seventeen days, at the expiration of which time the first premium is to be paid, it is provided that in the event of an injury to the insured, or anything happening upon which he would have a claim against the company, as against such claim occurring during that period, the company shall have a right to set off the whole premium of $57.60; or, in other words, the premium for the whole year. So that the provision that "All claims for injuries received during any period, for which its respective premium shall not have been actually paid, shall be forfeited to the company," stands there, in my opinion, entirely unaffected by the provisions of this exception, which do not seem to have any pertinency, or any possible application, to that provision. This so-called exception is a provision simply as to the amount of set-off that the company shall have as against claims for losses occurring during the different periods.

It has no influence upon the question as to when the premium is to fall due and be payable. I find in these different instruments which make up the contract between the insured and the company, no provision that a failure to *earn* the premium *at a certain time,* or *in a certain way,* or to *keep it on deposit in a certain place,* shall nullify the policy or shall work its forfeiture, or shall cause it to lapse; or that the doing of any of these things is required as a condition precedent to the taking effect of the policy for any period. There is no especial or peculiar value or virtue in the money earned by the insured as wages in work-

ing for the railroad company. Any other money is precisely as good to the insurance company. It seems to me that they so regarded it; that all they required was that the premiums should be paid when they fell due.

As I have said, it seems to me that a fair construction of the contract, in the light of all the circumstances, is, that the premiums were to fall due at the respective periods or times when the wages for the months of April, May, June and July were to fall due, and that therefore this provision in the assignment that all claims for injuries received during any period for which these respective premiums shall not be actually paid shall be forfeited to the company, must be considered in the light of all the surroundings and the evident intent of the parties; and read in the light of these things, it seems to me that it must be read as follows: That all claims for injuries received during any period for which the premium shall not be actually paid *after it becomes due and payable,* shall be forfeited to the company, otherwise this agreement would be a delusion and a snare to the insured. He promised to pay for and supposed he was to be insured during the month and seventeen days intervening between March 28 and May 14, when the first payment is to be made to the company. But he is to pay nothing actually, before May 14. And it seems to me that it would not lie in the mouth of the company to say that the construction to be put upon this provision is that if he suffered a loss during that period— an injury on account of which he supposed he would have a claim against the company—he could not recover, because the premium for the period had not been actually paid.

The same should be true as to the second period after he paid the premium for the first period upon May 14. That payment would carry the insurance up to May 28. The next installment of premium would be payable upon June 14. The time intervening between May 28 and June 14 would be seventeen days. The insured was injured during those seventeen days, to-wit, upon May 29. And thereupon he is confronted with the proposition that since the premium had not been actually paid for the period beginning upon May 28 and expiring upon June 14, he can recover nothing. In my judgment, the policy was in

full force. Credit for those seventeen days had been extended to him; and if upon June 14 he met the requirements—that is to say, paid any premium then due to the company—he would have a right to recover upon his policy.

But stress is laid upon the tenth clause in the certificate which reads as follows:

"In case the insured shall fail to leave in the hands of the paymaster any installment of premium as it shall fall due, as agreed in said order or assignment, this policy shall be void."

It seems to me that in the light of all the surrounding circumstances that is to be read in connection with the clause in the assignment to which I have referred requiring actual payment, is as follows: "In case the insured shall fail to leave in the hands of the paymaster any installment as it shall fall due, at the time it shall become due and payable to the company, so that the company may avail itself of it; or if he shall fail to pay that amount to the company at the time it shall become due and payable, then this policy shall be void." That he was not required to pay his premiums from this particular source, and was not required to earn the money in this particular way, or leave it on deposit in this manner, in order to keep the policy alive, is, I believe, entirely clear, and is conceded by counsel for the company. Apparently it was so understood, for a notice upon the back of the envelope which was delivered to him, in which his certificate was contained, and which formed a part of the agreement between the parties, reads as follows:

"Notice to Policy Holders:—If your policy is to be paid in installments by orders on a paymaster, it is your duty to make sure that each installment is deducted by the paymaster when due, and to notify him if it is not, that he may make the deductions at once. Should you leave the service of the company in which you were employed when insured, you should, for your own protection, *send the unpaid installments to the office as soon as they become due.*"

That is all the insured was required to do to keep his policy alive; he was not required absolutely to earn the money at the hands of the railroad company, nor was he required absolutely to leave it on deposit; he was given the option to do that, or

failing to do that, to pay the premium to the insurance company *when it fell due.*

As I say, it seems to me that the sole question here is: When did this premium for this particular period beginning upon May 28 fall due? Did the insured make default in the payment of that premium? There is no provision, as I construe this contract, that if he shall pay this premium from his wages in the way arranged by this assignment and not otherwise, he shall have until June 14 in which to pay it; that in that event it shall be due and payable upon June 14; but if he does not pay it in this way from this fund, then it shall fall due earlier, that it shall fall due upon May 28. As I understand it, that is the ground upon which a majority of the court arrive at their conclusion that the insured was in default; that is to say, if he had left this particular money on deposit, so that the insurance company might draw it on the 14th day of June, then he would have until June 14 in which to pay it, but failing to do that, he must pay it at the beginning of that period, *i. e.,* on May 28. I find in these writings which make up the contract no provision that any part of the premium shall in any instance be paid at the beginning of the period, or that it shall then fall due. Let us apply that construction and that course of reasoning to the third and fourth installments. What then would be the effect? The third installment is payable from the June wages, and on July 14, when the June wages would be payable. It seems to me, as the result of that reasoning, if he failed to leave his June wages on deposit so that they might be drawn by the company on July 14, his obligation would be to pay the $14.40 on account of the third period at the beginning of the third period, which would be on July 28, fourteen days later. In other words, by withdrawing the money from the hands of the railroad company, he has the time extended for fourteen days in which to pay the premium for the third period and keep the policy alive. Apply it to the fourth period: He withdraws his July wages; the railroad company is without funds to pay for that period upon August 14, and the effect is that it gives him until the beginning at that period, to-wit, October 28, in which to pay the premium for that period and keep the policy alive, post-

poning the payment to the insurance company forty-four days. I do not think that the insured has any such right. I think that the agreement is plain that he is to pay for each of the periods at the time fixed for the payment of his wages for the months so to be devoted to the payments for the periods respectively; in other words, the assignment, besides being an assignment, is an agreement that the premiums for the respective periods shall be due and payable at the times that his wages for the respective months become due and payable, and that whether the insured pays the premiums from these wages or from some other source is all the same to the insurance company.

Counsel insist that there is some security to the insurance company through this assignment of wages, but it is quite apparent from the whole record that there is not. The assignment is not recognized by the railroad company unless acquiesced in by the employee at the period when the wages become due and payable. The wages are then on hand, and the insured may or may not permit them to be drawn by the insurance company. They are entirely under the control of the insured during the whole period, as much so as if he had the money in his own pocket. It is simply a convenient arrangement whereby the insured may obtain a certain credit for part of the time, and the insurance company may have its pay far in advance of the insurance period for part of the time, and the insured is not to be troubled with hunting up the insurance company to pay his premium, and the insurance company is not to be troubled hunting up the insured to collect. It is a convenient arrangement for the transfer of this money that shall be due and on hand at the time it shall become due from the railroad to the insured and from him to the insurance company. But if he has other money which he pays to the insurance company it is certainly as valuable to them, and ought to be as effective for the preservation of the life of his policy. They might as well, so far as the assignment, as a matter of security, have provided that the money which he derived from some certain occupation for a certain period he should keep in his left hand trousers pocket until it became due and payable to the company, and if he kept it in his left hand trousers pocket during that period his policy should be kept

alive, but if he failed to do it the policy would lapse.   The important thing is, that when the money becomes due and payable to the company. it shall be paid to the company.

Long before June 14 the insured had received his injury, and his claim against the company, it is conceded, if the policy were alive, amounted to more than the premium then due. Therefore he was not then called upon to pay anything to the company.   The company did not undertake to defeat his claim upon the ground that the premium had become due on May 28, and that he had failed to pay it; the company do not assert the claim that the premium became due at an earlier period in consequence of his having failed to leave his wages with the railroad company, but they assert here the claim that because he did not leave this money in the hands of the railroad company until June 14, which was the time to draw it, his policy had lapsed, notwithstanding the fact that they had no right to draw it, and had no claim upon it, or any part of it for any of this period between May 28 and June 14, even if he had left it there, because he had suffered this injury and had a claim against the insurance company which amounted to more than the premium for this period.   I do not believe that is a just, or fair or reasonable conclusion, and therefore I dissent.